10214

ADAMS *ET AL.* v. HASELDEN *ET AL.*.

(99 S. E. 762.)

1. FRAUD—ACTIONS—PARTIES.—Where individual plaintiffs paid purchase price installment on land and formed a corporation, which took a deed to land and gave a mortgage back for balance of purchase price, *held*, that plaintiffs could not, after insolvency of corporation and foreclosure of mortgage, sue defendant sellers for fraudulent representations regarding land, since right of action belonged to corporation.

2. ABATEMENT AND REVIVAL—ACTION FOR FRAUD—DEATH OF DEFENDANT.—A damage action for fraudulent representations regarding land sold does not survive defendant seller's death.

Before MAULDIN, J., Charleston, Spring term, 1918. Affirmed.

Action by E. C. L. Adams and others against M. V. Haselden, Elizabeth L. Horlbeck, W. C. Fripp, and others. Judgment for defendants, and plaintiffs appeal.

*Messrs. Lyles & Lyles,* for appellants, cite: *As to the right of plaintiffs, as individuals, to bring this action:* Benjamin on Sales, Corbin's Edition —; 20 Cyc., p. 80; 116 U. S. L. Ed., Book 29, p. 740 (Editor's note); 160 U. S. L. Ed., Book 40, p. 543; 63 N. H. 152; 56 Am. Rep. 501; 78 Me. 528; 17 Howard's Rep. U. S. 183; 15 L. Ed. 208, 213; 1 L. R. A. 664; 28 U. S. C. C. A.; 8th Enc. Pl. & Pr., p. 680; 37 Cal. 183; 25 Minn. 493; 63 N. H. 152; 56 Am. Rep. 501; Kerr on Fraud and Mistake, notes, pp. 371, 374; 3 Keyes 357; 5 Ill. 88; Pomeroy's Eq. Jur., 3d Ed., vol. II, p. 1605, sec. 899; 14 Am. & Eng. Enc. of Law, 2d Ed., vol. 14, p. 148; 12 Vesey 477, 484; 5 Bligh (N. S.) 730, 751; 2 Bond. (U. S.) 267; 50 Ill. 88; 44 Ind. 242; 60 Ind. 478; 89 Mo. 609; 3 Keyes (N. Y.) 357; 19 N. Y. Supp. 439; 17 Ohio 16; 12 Ohio St. 181; 16 Ohio St. 67; 88 Am. Dec. 436; (Supreme Court) 19 N. Y. Supp. 439; 78 Me. 528; 6 Cush. (Mass.) 19; 52 Am. Dec. 761; L. England —; 2 M. & W. 519; 4 M. & W. 337; 29 L. J. Exch. 65; L. R. 6, H. L. 337; 36 L. T. (N. S.) 617; 10 M. & W. 109; — 19 Ga. 310; 20 Ga. 371; 50 Ill. 88; 49 Ill. App. 426; 80 Iowa 477; 78 Me. 528; 139 Mass. 437; 11 Allen (Mass.) 514; 6 Met. (Mass.) 527; 25 Mich. 515; 80 Me. 614; 83 N. Y. 34; 38 Am. Reports 38; (Supreme Court) 10 N. Y. Supp. 884; 126 N. Y. 53; 3 Keyes (N. Y.) 357; (Supreme Court) 19 N. Y. Supp. 439; 8 Hun. (N. Y.) 638; 16 Ohio St. 67; 88 Am. Dec. 661; 24 Pa. St. 347; 64 Am. Dec. 661; 20 R. I. (pt. i.) 101; 77 Tex. 48; 19 Am. St. Rep. 738; 17 Ohio 16; 4 Strob. Law 34. *As to cause of action surviving against estate of Horlbeck:* 96 S. E. Rep. (S. C.) 907; 179 U. S. 116.

*Messrs. Mitchell & Smith, James Simons* and *Benet, Shand & McGowan,* cite: *As to no cause of action accruing to plaintiffs as individuals:* 108 S. C. 56; 63 N. H. 152; 56 Am. Rep. 501; 78 Me. 528; 5 Bing. (N. C.) 97; 2 M. & W. (English) 532.

June 24, 1919.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The questions argued before this Court in this case arise from an order sustaining a demurrer to the complaint. The complaint is a long one, but the essential allegations may be briefly stated:

: John S. Horlbeck, deceased, owned a certain plantation, on which there was a pecan grove, and gave to one W. C. Fripp, a contract of sale; that Fripp transferred his interest under that contract to the plaintiffs who organized a corporation known as the South Atlantic Pecan Company, to purchase and operate the pecan grove, and Mr. Horlbeck conveyed the land to the corporation for the sum of $250,-000, payable in part in cash and in part on credit, secured by a bond of the corporation and a mortgage of the land conveyed. The bond was not paid, the mortgage foreclosed, and bid in by Mr. Horlbeck for the sum of $50,000, which the plaintiffs allege was the full value of the mortgaged premises. The plaintiffs allege that the corporation issued to them corporate stock for the money they had paid to Mr. Horlbeck; that the price was grossly excessive, and that the plaintiffs and other parties were induced to enter into the transaction by reason of false and fraudulent misrepresentations of the defendants, Fripp and Haselden, who were in collusion with Mr. Horlbeck. The complaint alleges a loss of $82,380, paid, principal and interest, to Mr. Horlbeck, and $20,000 improvements on the place, or a total loss of $102,380. The complaint alleges:

"15. That the said South Atlantic Pecan Company expended large sums of money in the effort to fertilize the said pecan orchards and to cultivate the same in scientific and proper methods, so as to bring the same up to the productive capacity as it had been represented, as hereinbefore alleged, that such orchards should be fertilized and cultivated. The sums of money so expended by the said South

Atlantic Pecan Company, over and above all returns received from the sale of the nuts or other income from said premises, exceeded the unexpended balance of the capital stock which had been subscribed to and paid into the said South Atlantic Pecan Company, and aggregated, as these plaintiffs are informed and believe, approximately $20,000, in addition to the sums raised and paid to the said John S. Horlbeck as before alleged.

"16. That the payments made by these plaintiffs and others prior to the organization of the said corporation were assumed by the said South Atlantic Pecan Company and credit was allowed to these plaintiffs and others on account of their subscriptions to the capital stock of said South Atlantic Pecan Company for such payments.

"17. That earnest efforts were made to finance the said South Atlantic Pecan Company, but it was soon discovered that, owing to the very disappointing quantity and quality of the crops of nuts obtained, the credit of the company was very limited, and these plaintiffs and others who had subscribed and paid up the capital stock of said corporation, not being willing or able to put in additional funds, the said John S. Horlbeck commenced an action of foreclosure against the said South Atlantic Pecan Company, which resulted in a decree of foreclosure of the mortgage so executed as aforesaid and a sale of the premises covered by said mortgage, which occurred on the 16th day of April, 1916, and at such sale the said John S. Horlbeck bid in the said property at the price of $50,000, which these plaintiffs allege was a full market value thereof, his being the only bid therefor, and took from the master for Charleston county a deed for said premises at said price, and thereafter became the owner again of said premises in a much improved condition from what they had been at the time of his sale thereof to the said South Atlantic Pecan Company.

"18. That the said plaintiffs had discovered from the crop of pecans for the year 1913, which came upon the market

about the end of November, that a large bulk of said nuts were of very inferior grade, and had also discovered that the yield of the trees was far below normal, but up to that time these plaintiffs and the other parties interested in the said corporation had not suspected the cause for such decreased yield and still hoped, as represented by the said John S. Horlbeck and M. V. Haselden, that the nuts could be marketed at a profitable price and that the yield for the year 1914 would become normal, and every effort was made by the said South Atlantic Pecan Company to develop the grove in the manner which had been pointed out by the said John S. Horlbeck and the defendants, M. V. Haselden and W. C. Fripp, as the proper methods for the development thereof; but again the crop for the year 1914 proved wholly disappointing, both in the size of the nuts and in the amount of the yield therefrom, and the same was true as to the crop of the year 1915, and during the winter of the year 1915-1916 these plaintiffs began to suspect that the failure of the orchard to bear a normal yield of nuts was due to something which these plaintiffs had not then discovered. They soon, however, discovered the fact that the orchard has for years been subject to the disease of scab, hereinbefore referred to, and now allege that the small yields of nuts from said trees was due to the presence of said disease, and to the inferior character of the trees constituting the orchards.

"19. That the corporation, the South Atlantic Pecan Company, became utterly ruined by the proceedings aforesaid and the misrepresentations which had been made, hereinbefore alleged, and all of its assets have been entirely exhausted.

"20. That these plaintiffs and others who became interested in the said South Atlantic Pecan Company as stockholders, upon the strength of the representations made by the said John S. Horlbeck and the defendants, M. V. Haselden and W. C. Fripp, have been damaged in the sum of $250,000, of which the said John S. Horlbeck received in

money the sum of eighty-two thousand and odd dollars, as above stated, and is liable for interest thereon from the several dates from which the said sums were received by him, and also acquired back the land so conveyed to the said South Atlantic Pecan Company, as above alleged, and the balance of said sum is due to losses incurred by these plaintiffs and others in endeavoring to carry the transaction through by the wrongful act of the said John S. Horlbeck and the said defendants, W. C. Fripp and M. V. Haselden, conspiring to perpetrate the same.

"21. That thereafter the said John S. Horlbeck departed this life, leaving of force his last will and testament, whereof he appointed the defendants, Elizabeth L. Horlbeck and Fred. H. Horlbeck, executrix and executor thereof, and said will has been duly admitted to probate in the office of the Court of probate for the county of Charleston, and State aforesaid, and the said Elizabeth L. Horlbeck and Fred. H. Horlbeck have duly qualified as such executrix and executor."

The defendants demurred on two grounds: (1) That the right of action, if any, is by the corporation, and not by the individual stockholders. (2) The cause of action, if any, was against Mr. Horlbeck, and, he being dead, the action does not survive. The demurrer was sustained on the first ground; the second was not considered. Plaintiffs appealed.

1. It appears from the allegations of the complaint that the corporation, the South Atlantic Pecan Company, is insolvent. There is no allegation that there are no creditors to be provided for. The $20,000 paid for improvements was paid by the corporation. The receipt for $82,380 was accepted by the corporation and issued its stock therefor. The losses alleged are the losses of the corporation. Of course, when corporations lose, their stockholders lose. The loss alleged is through the corporation. The case of *Spikes v. English,* 4 Strob. 34, is not authority here. At page 37 the Court says:

"The only question remaining is whether Spikes had, strictly speaking, any right of action. But can there be any rational doubt of his right of action? He had indorsed the bill to Williams & White for a full consideration, and was liable to them upon such indorsement for the full amount of the bill. It was clear, then, that Spikes, having the bill in possession, had either recompensed Williams & White, or had in some way reassumed his right to the bill."

There is no liability ever hinted at in this case. Instead of paying the money into the corporate treasury, the plaintiffs paid some of it direct to Mr. Horlbeck, and, with the evidence of the payment, took corporate stock. The plaintiffs allege that their loss was through the wrecking of the corporation, and the corporation is the proper party to bring this suit so that the rights of all interested in the fund may be adjusted.

2. The question as to the survival of the right of action was fairly made and should have been passed upon by the trial Judge. This is not an action for money wrongfully received. Appellant cites *United States v. Daniel,* 2 6 How. 11, 12 L. Ed. 323: "The rule respecting abatement is this: If the person charged has received no benefit to himself at the expense of the sufferer, the cause of action does not survive. But where, by means of the offense, property is acquired which benefits the testator, there an action for the value of the property survives against the executor."

The appellants did not bring their action for the money paid to Mr. Horlbeck, to wit, $82,380, but for $250,000 damages.

The judgment is affirmed.

MESSRS. JUSTICES WATTS and GAGE concur.

MR. CHIEF JUSTICE GARY, *dissenting*. This is an appeal from an order sustaining a demurrer to the complaint on the following ground:

"Because it appears on the face of the complaint, that the complaint does not state facts sufficient to constitute a cause of action, in that the cause of action, if any exists, is a cause of action in favor of South Atlantic Pecan Company, a corporation, and not in favor of the plaintiffs herein, and any action upon said cause of action should be brought in the name of the South Atlantic Pecan Company."

Error on the part of his Honor, the Circuit Judge, in sustaining the demurrer is thus assigned by the appellants:

"Because his Honor erred in holding that the facts alleged in the complaint showed that a cause of action existed in favor of the corporation, South Atlantic Pecan Company, when he should have held that the facts alleged showed a cause of action existing in favor of the plaintiffs, as individuals, based upon false and fraudulent representations made to them as individuals, and intended to influence their action as individuals, and should have held that the subsequent transfer of the contract for purchase, induced by such false representations to the corporation, was not a transfer of their rights of action for the injury resulting to them as individuals from the conspiracy and false representations of the defendants."

The complaint unquestionably alleges that the plaintiffs, in their individual capacity, entered into a contract with John S. Horlbeck (now deceased) for the purchase of the lands in dispute, and paid part of the purchase money, prior to the incorporation of the South Atlantic Pecan Company; that they were induced to enter into the contract by false representations of Horlbeck as to the condition of the lands, whereby they were damaged. If these allegations are true, then the plaintiffs became the equitable owners of the lands, together with a right of action for a breach of contract on the part of Horlbeck. Their right of equitable ownership had become vested, and their cause of action for breach of the contract had accrued, before the lands were conveyed to the company by Horlbeck. After Horlbeck had entered

into the contract with the plaintiffs, he did not have the power to destroy their vested interests in the property, or to defeat their cause of action against him for breach of the contract.

The allegations of the complaint show that Horlbeck conveyed the lands to the company by consent of the plaintiffs, and as they had the right, under the terms of the agreement, to require him to convey the lands. to them, or to whomsoever they might direct, the conveyance to the company was, in effect, the same as if it had been made by them. The plaintiffs consented for the payments they had made to Horlbeck to be credited upon the agreed amount of the purchase money, to wit, $210,000, in consideration of stock which was issued to them by the company. It was for this reason that the mortgage was not executed in favor of Horlbeck for the full amount of the purchase money, but for only $174,000. The lands were sold under foreclosure of the mortgage for $50,000 and purchased by Horlbeck. But the complaint does not allege any facts showing an intention on the part of the plaintiffs to transfer or assign their cause of action for breach of the contract, or in any other manner to give the company the benefit of it.

When Horlbeck conveyed the lands to the company with the consent of the plaintiffs, they, as individuals, no longer had a vested interest in the land itself. But the cause of action for breach of the contract, arising from the false representations as to the condition of the property, was entirely separate and distinct from the other cause of action by which they could have compelled specific performance of the contract. As there are no allegations in the complaint, showing that the plaintiffs have disposed of their cause of action for breach of the contract, the demurrer was erroneously sustained.

This is the only question now properly before the Court for consideration. The judgment of the Circuit Court should be reversed.

MR. JUSTICE HYDRICK.  I concur in thinking the judgment should be reversed, because I think the complaint states a cause of action in favor of the plaintiffs as individuals for fraud and false representation which resulted in damage to them as individuals.